## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIGUEL A. VAZQUEZ,                        :
    *Plaintiff*,                           :
                                           :       CIVIL ACTION
    v.                                     :       NO. 16-1727
                                           :
CARR & DUFF, INC.,                        :
    *Defendant*.                           :

## MEMORANDUM

**JONES, II  J.**                                                    **July 8, 2020**

### I.  INTRODUCTION

On April 11, 2016, Plaintiff Miguel A. Vazquez ("Plaintiff") filed a complaint with the Court against his former employer, Carr & Duff, Inc. ("Defendant"), and Defendant's employee Thurmond Pace. In an Amended Complaint filed on October 12, 2017 (ECF No. 22), Plaintiff alleges that Defendant discriminated against and harassed him on the basis of sex, thereby creating a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Pennsylvania Human Relations Act § 95, and the Philadelphia Fair Practices Ordinance § 9-1103(1) (Counts I, III, and V, respectively).  Plaintiff also alleges that Defendant unlawfully retaliated against him in violation of Title VII, 42 U.S.C. § 2000e-3(a) and the Philadelphia Fair Practices Ordinance § 9-1103(1)(g) (Counts II and VI, respectively).  Finally, Plaintiff contends that Defendant unlawfully aided and abetted Thurmond Pace's discriminatory behavior in violation of the Pennsylvania Human Relations Act § 955(e) ("PHRA") and the Philadelphia Fair Practices Ordinance §9-1103(1)(h) ("PFPO") (Counts IV and VII, respectively).

On July 11, 2018, the Court partially granted Defendant's Motion to Dismiss (ECF No. 26), as well as granted Thurmond Pace's Motion to Dismiss (ECF No. 27) in its entirety.  (*See* Court's Opinion, ECF No. 31).  Thereafter, Plaintiff's remaining claims were sexual harassment in violation of Title VII, the PHRA, and the PFPO; and retaliation in violation of Title VII and the

PFPO (Counts I, II, III, V, and VI, respectively).  Presently before the Court is Defendant's Motion

for Summary Judgment on Plaintiff's sexual harassment and retaliation claims. (ECF No. 54).  For

the reasons set forth herein, Defendant's Motion shall be denied in its entirety.

## II.    STATEMENT OF FACTS

In the spring of 2014, Ray King, Defendant's Vice President of Operations, requested that

the International Brotherhood of Electrical Workers, Local 126 (the "Union") identify eligible,

qualified members to report for training and orientation to fill Defendant's need for more ground

hands.  (SUF ¶¶ 12-14; Def. Ex. E at 75: 9-14; Def. Ex. F at 7).  As a result, Plaintiff was hired by

Defendant on April 7, 2014.  (Am. Compl. ¶ 17; SUF ¶ 11; Def. Ex. B at 17).  He was initially

assigned to work with foreman Thurmond Pace.  (Am. Compl. ¶ 17; SUF ¶ 19; Def. Ex. B at 18).

The Parties dispute Pace's level of authority with regards to Plaintiff.  (*Contrast* SUF ¶ 21; Def.

Ex. E at 184:10-185:5; Def. Ex. H at 66:13-16, 77:16-20; and Def. Ex. I at 75:23-77:1 *with* Am.

Compl. ¶ 18; CSUF ¶ 21; Pl. Ex. 3 at 66:17-22, 77:21-23; Pl. Ex. 6 at 16:7-17:1; Pl. Ex. 7 at 16:1-

3, 27:2-6; and Pl. Ex. 9 at 3712-18).

Plaintiff alleges that around June of 2014 Pace began harassing him by engaging in sexual

conduct and making sexually explicit statements.  (Am. Compl. ¶ 20; SUF ¶ 9; Def. Ex. B at 23).

Between June and September of 2014, Pace "exposed his penis and genitalia to Plaintiff, showed

Plaintiff explicit pornographic images, attempted to kiss Plaintiff, and discussed his own obscene

sexual exploits on an on-going and continual basis."  (Am. Compl. ¶ 23; SUF ¶ 10; Def. Ex. B at

20, 22-24, 29, 35-36).  For instance, on one occasion, Pace snuck up behind Plaintiff and threw

rocks down his pants while making disparaging remarks about Plaintiff's body.  (Am. Compl.

¶ 36; CSUF ¶ 10).  On another, Pace called for Plaintiff while Plaintiff was driving away from

their workplace and was standing with his genitals exposed in his hand when Plaintiff slowed to

respond.  (Am. Compl. ¶ 32; CSUF ¶ 10).  Other workers and supervisory employees witnessed

this behavior, including Defendant's Field Operator, Joseph Curran, and Ground Hand/Traffic Technician, Mark Franklin. (Am. Compl. ¶ 27; CSUF ¶ 29; Pl. Ex. 8 at 31:11-16, 33:22-24; Pl. Ex. 5 at 49:18-20, 46:2-14). When faced with Plaintiff's repeated demands to stop, Pace would laugh it off, stating that his conduct was "just a joke." (Am. Compl. ¶ 26). At all times relevant, Defendant's employee handbook contained an Equal Employment Opportunity Commission ("EEOC") Policy which directed complaints to Defendant's EEOC Officer, Linda Heintz. (SUF ¶ 15; Def. Ex. G at 11-2; Def. Ex. E at 95:20-96:13; CSUF ¶ 15; Pl. Ex. 4 at 17:6-14; Pl. Ex. 7 at 20:19-21:9; Pl. Ex. 12).

In September 2014, Plaintiff worked briefly with foreman Scott Wohler when Pace took time off for a vacation. (Am. Compl. ¶ 37). While Plaintiff asserts that he reported Pace's conduct to Wohler on or around September 18, 2014, Defendant claims that Joseph Curran actually told Wohler about the ongoing harassment. (Am. Compl. ¶ 38; SUF ¶ 37; Def. Ex. E at 143:12-147:10). In any event, Plaintiff met with Defendant's Director of Risk Management, Robert Wertz, and Project Manager, Robert Casey, to discuss the allegations about Pace after Wohler became aware of the issue. (Am. Compl. ¶¶ 39, 40; SUF ¶ 40). Following a lengthy discussion about the hostile work environment Pace had created, Wertz and Casey assured Plaintiff that they would handle the situation, and Plaintiff was transferred to a different project. (Am. Compl. ¶¶ 41, 42). The Parties dispute whether or not Plaintiff was also offered a paid day off before beginning work on the new project the following Monday. (CSUF ¶¶ 42, 43; Pl. Ex. 2 at 170:8-10; Pl. Ex. 11).

Nonetheless, Plaintiff claims that the situation with Pace was not remedied following his meeting with Wertz and Casey. Plaintiff continued to see Pace at Headquarters, and he alleges that on as many as ten to fifteen occasions, Pace would "lurk and stare at [Plaintiff]." (Am. Compl. ¶ 46; CSUF ¶ 44). Further, despite Defendant's statement that they determined Pace "was

attempting to motivate employees in an unprofessional fashion," Plaintiff argues that Defendant's investigation of Pace was inadequate, especially given the Last Chance Agreement he had entered into in 2011 following sexual harassment allegations by a female employee.  (SUF ¶ 46; Def. Ex. N at 41:5-18; CSUF ¶ 45; Def. Ex. O; Am. Compl. ¶ 21; SUF ¶ 48; Def. Ex. R).   The Parties dispute whether or not Pace was ultimately reprimanded; while Defendant asserts that Pace was required to attend one day of unpaid sensitivity training and lost an additional three days' pay, Plaintiff claims that Pace in fact had no recollection of being punished for his misconduct. (*Contrast* SUF ¶ 47; Def. Ex. N at 41:5-18; and Def. Ex. O; *with* CSUF ¶ 47; Pl. Ex. 3 at 54:7-12, 64:16-18).

Following these events, Plaintiff filed a Charge of Discrimination with the EEOC and the Pennsylvania Human Rights Commission ("PHRC") on or around October 23, 2014, on the grounds that he had been subject to sexual harassment in violation of Title VII.  (Am. Comp. ¶ 47; SUF ¶ 51; Def. Ex. Q).  Approximately three weeks later, Heintz received a letter from the EEOC, causing her to question Plaintiff about why he had not informed her of the harassment and whether he had obtained a lawyer.  (Am. Compl. ¶ 48).  Days after, Defendant ran a credit check on Plaintiff.  (Am. Compl. ¶ 50; SUF ¶ 52).  Finally, on January 14, 2015, King informed Plaintiff that he and another ground hand, Juan Rodriguez, were being furloughed for two reasons: (1) a lack of demand for work during the winter months; and (2) their failure to obtain a Commercial Driver's License ("CDL") within three months of commencing work with Defendant. (Am. Compl. ¶ 52; SUF ¶ 56).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving

party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To that end, however, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*,

283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted).  Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact.  *Id*.

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003).  However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment.  *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Dec. 2, 2016), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.").

## IV.   DISCUSSION

### A.   Sexual Harassment Under Title VII, the PHRA, and the PFPO

Defendant's first argument in support of their Motion for Summary Judgment is that Plaintiff has failed to establish a *prima facie* case of sexual harassment under Title VII, the PHRA, and the PFPO.  (Defs. Br. Supp. Mot. Summ. J. 6).  As claims of sexual harassment pursuant to the PHRA and the PFPO analytically parallel claims brought under Title VII, Defendant's arguments concerning Plaintiff's Counts I, III, and V may be addressed together. *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996); *Joseph v. Cont'l Airlines*, 126 F.Supp.2d 373, 376 n.3 (E.D. Pa. 2000).

In order to establish a *prima facie* case of sexual harassment by way of hostile work environment, a plaintiff must show the following: "1) he or she suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).  Defendant challenges the first and fifth elements of Plaintiff's *prima facie* case, arguing that Plaintiff cannot establish that he was discriminated against because of his sex and that he cannot establish that Pace's conduct should be imputed to them on a theory of *respondeat superior*.  (Defs. Br. Supp. Mot. Summ. J. 7, 12). The Court finds that genuine issues of material fact exist with regard to both prongs of Plaintiff's claim of sexual harassment.  As such, the Court denies Defendant's Motion for Summary Judgment on those counts.

### 1. Discrimination Based on Sex

Defendant argues that Plaintiff's sexual harassment claims fail as a matter of law because he has failed to establish that he was discriminated against because of his sex. Following the Supreme Court's pronouncement that "same-sex sexual harassment is actionable under Title VII," the Third Circuit provided a framework for examining claims of same-sex harassment:

> "[T]here are at least three ways by which a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination because of sex -- the harasser was motivated by sexual desire, the harasser was expressing a general hostility to the presence of one sex in the workplace, or the harasser was acting to punish the victim's noncompliance with gender stereotypes. Based on the facts of a particular case and the creativity of the parties, other ways in which to prove that harassment occurred because of sex may be available."

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 260 (3d Cir. 2001).

Although Defendant correctly notes that *Bibby* "provides an evidentiary method of proving such harassment, rather than a "mandatory categorical test for same-sex harassment," they nonetheless move for summary judgment on the grounds that Plaintiff has not demonstrated that his harassment was motivated by Pace's sexual desire, that Pace displayed hostility towards the participation of men in the workplace, or that Pace's conduct was motivated by a belief that Plaintiff did not conform to the stereotypes of his gender.  (Defs. Br. Supp. Mot. Summ. J. 12-14) (citing *West v. Dan Lepore & Sons Co.*, 2019 WL 1227716 at *3 (E.D. Pa. 2019)).  This argument is unduly narrow and fails to take into account the Third Circuit's pronouncement that "[t]he intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course."  *Moody v. Atl. City Bd. of Ed.*, 870 F.3d 206, 214 (3d Cir. 2017) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 n.3 (3d Cir. 1990)).  Although *Moody* involved workplace sexual harassment by a member of the opposite sex, the Third Circuit's opinion included no language which would preclude its application to cases of same-sex harassment.

In the instant case, Plaintiff references a number of specific incidents where Pace allegedly engaged in just the type of inappropriate sexual behavior specifically identified in *Moody*.  For instance, Plaintiff notes that "Defendant [Pace] would quietly come up behind Plaintiff, without Plaintiff's knowledge" and "pull out his penis and genitals, hold them in his hand and scream for Plaintiff's attention, causing Plaintiff to turn around quickly to observe Defendant [Pace]'s penis and genital[s] inches from Plaintiff's face" while laughing and saying, "Look how big it is," and, "[Hispanic men] do not have a big one like I do."  (Am. Compl. ¶ 24).  On another occasion in August 2014, Plaintiff claims that "as [he] was leaving work for the day in his car, Defendant [Pace] screamed for Plaintiff to stop" and "was again standing with his pants down and with his

penis and genitals in his hand" when Plaintiff slowed to respond.  (Am. Compl. ¶ 32).  Around the same time, Pace reportedly snuck up behind Plaintiff while he was working, "looked down Plaintiff's pants, and threw stones down Plaintiff's pants, laughing and stating that Plaintiff has 'a nasty ass,' is 'fat, hairy, disgusting' and not 'packing'" like himself.  (Am. Compl. ¶ 36).  Further, Plaintiff claims that "[o]n an almost daily basis, Defendant [Pace] would call Plaintiff and Plaintiff's co-workers over to Defendant [Pace]'s truck to show them the obscene and degrading pornographic pictures and videos Defendant [Pace] was watching" and that he "would regularly compare his own personal sexual exploits to those in the pictures and videos."  (Am. Compl. ¶ 35).  As the Third Circuit stated in *Moody*, "[w]hen the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied" in determining whether harassment occurred on the basis of sex.  *Moody*, 870 F.3d at 214.  Therefore, the Court finds that on that basis alone——at the very least—a genuine issue of material fact exists as to whether Pace's conduct amounted to same-sex harassment.

However, even if the Court accepts Defendant's narrow interpretation of same-sex sexual harassment jurisprudence, genuine issues of material fact still exist regarding whether Pace was sexually attracted to Plaintiff or whether he discriminated against Plaintiff for his failure to conform to gender stereotypes. As to the former issue, Defendant states that "[s]everal co-workers [...] unequivocally testified that there was no reason to believe Pace was sexually attracted to [Plaintiff]."  (SUF ¶ 27; Def. Ex. I at 103:8-11; Def. Ex. L at 61:22-24; Def. Ex. M at 49:2-8). Defendant proposes that Plaintiff's only support for the contention that Pace may have been sexually attracted to him is one instance where Pace allegedly "lung[ed] towards him and tr[ied] to kiss him" and one conversation in which Pace discussed skinny dipping with a male neighbor. (SUF ¶¶ 28, 32).  However, Plaintiff challenges that characterization, noting that "[m]any of

[Plaintiff's] colleagues when deposed [...] questioned whether Mr. Pace was attracted to men, some even going so far as to say they felt he was bi-sexual."  (CSUF ¶ 27; Pl. Ex. 2 at 125:1-8; Pl. Ex. 8 at 47:14-20).  Plaintiff also offers more detail on Pace's attempt to kiss him, stating that "[h]e just kept grabbing me, putting his hands on me, [and] trying to hold me."  (CSUF ¶ 31).  As to the latter issue, Defendant contends that "Pace never teased [Plaintiff] for being feminine or looking like a woman."  (SUF ¶ 36; Def. Ex. E at 135:13-15, 138:6-9; Def. Ex. I at 104:19-105:9; Def. Ex. J at 59:22-60:5; Def. Ex. M at 49:9-16).  Plaintiff believes otherwise, stating that Pace would degrade him at work and "[imply] that he was feminine or lesser than the other men" by making comments describing him as "cute" or telling him that he would look "more handsome" if he trimmed his beard. (CSUF ¶ 36; Pl. Ex. 1 ¶ 26; Pl. Ex. 2 at 134:22-135:12, 138:21-139:7).  These alternate characterizations present a question of credibility, which constitutes a genuine issue of material fact to be resolved by the factfinder at trial.

### 2.  *Liability Under Respondeat Superior*

#### a)  <u>Existence of Supervisor Relationship</u>

Next, Defendant argues that, even if this Court were to determine that Pace discriminated against Plaintiff on the basis of his sex, Plaintiff has nonetheless failed to establish as a matter of law that they should be held responsible for Pace's conduct on a *respondeat superior* theory.  There are various ways that an employer may be liable for an employee's conduct by way of *respondeat superior*.  The Supreme Court explained the routes of liability for claims of harassment where the harassing employee was a supervisor in *Vance v. Ball State University*.  In that case, the Court held that where a harassing supervisor took a tangible, adverse employment action against an employee, the employer would be held strictly liable; however, where a harassing supervisor took no tangible, adverse employment action against an employee, the employer could rebut the presumption of liability by showing that: (1) they exercised reasonable care to prevent and correct harassment;

and (2) the plaintiff unreasonably failed to take advantage of preventative or corrective opportunities. *Vance v. Ball State Univ.*, 570 U.S. 421, 440 (2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Where the harassing employee was not a supervisor, the employer may still be held liable if they behaved negligently in response to the harassment. *Vance*, 570 U.S. at 427 (citing *Faragher*, 524 U.S. at 789). This Court has previously determined that Plaintiff can only establish Defendant's liability via *respondeat superior*, if at all, on a supervisor-as-harasser theory. (*See* Court's Opinion, ECF No. 31). Therefore, we need not address Defendant's arguments concerning the reasonability of their behavior under a coworker-as-harasser theory. (Defs. Br. Supp. Mot. Summ. J. 8-11).

In *Vance*, the Supreme Court defined a "supervisor" as someone with the authority to "take tangible employment actions against the victim, *i.e.*, to effect a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 570 U.S. at 431 (citing *Ellerth*, 524 U.S. at 761). In establishing a specific definition of "supervisors," the Court purposefully rejected the "nebulous" approach taken by the EEOC at the time, which "[tied] supervisor status to the ability to exercise significant direction over another's daily work," in favor of one they deemed more "easily workable." *Vance*, 570 U.S. at 431-32.

In the present case, there is a genuine issue of material fact as to whether Pace had such authority regarding Plaintiff's employment. Defendant claims that "[a]s a foreman, Pace did not have the authority to hire, fire, promote or reassign [Plaintiff]." (SUF ¶ 21; Def. Ex. E at 184:10-185:5; Def. Ex. H at 66:13-16, 77:16-20; Def. Ex. I at 75:23-77:1). Defendant also emphasizes that Plaintiff was ultimately both hired and terminated by Ray King, not Pace, and that Plaintiff referred to King as "The Man" repeatedly during his deposition in this case. (SUF ¶¶ 13, 14, 57;

Def. Ex. F at 6; Def. Ex. E at 75:9-17; Def. Ex. F. at 1, 6-8; Def. Ex. E at 171:23-172:3, 112:9-113:13).   However, Plaintiff denies this characterization of Pace's authority, citing multiple statements by Defendant's employees indicating that foremen, including Pace, could request additions to and removals from their crews.  (CSUF ¶ 21; Pl. Ex. 3 at 66:17-22, 77:21-23; Pl. Ex. 6 at 16:7-17:1; Pl. Ex. 7 at 16:1-3, 27:2-6; Pl. Ex. 9 at 37:12-18).  In fact, Plaintiff claims that Pace played a direct role in his initial hiring, noting that Pace informed Plaintiff that he "chose" him for employment with Defendant.  (Pl. Memo. Opp. Def. Mot. Summ. J. 11-12; Pl. Ex. 1 ¶¶ 4-8; Pl. Ex. 2 at 57:7-18, 65:8-67:21, 83:12-14; Pl. Ex. 8 at 15:3-10, 24:13-21).

In their respective briefs, the Parties disagree concerning the applicability of this Court's recent opinion in *West v. Dan Lepore & Sons Company* to the issue of Pace's authority in this case. (Def. Br. Supp. Summ. J. at 8; Pl. Memo. Opp. Def. Mot. Summ. J. at 11).  In *West*, which also centered around same-sex harassment by an employee's foreman, this Court noted that "the record [provided] conflicting testimony with respect to whether Cianciulli had the ability to recommend employees for termination from employment."  *West*, 2019 WL at *7.  On that basis, this Court held that "a jury could reasonably find that Cianciulli possessed the means by which [to] 'bring[] the official power of the enterprise to bear on subordinates."  *Id.* (citing *Vance*, 570 U.S. at 440). This Court is faced with a nearly identical situation here.  The Parties' conflicting characterizations of Pace's authority over the Plaintiff present a genuine issue of material fact to be resolved by the factfinder at trial.

Additionally, Plaintiff asserts that Defendant acted unreasonably by failing to prevent Pace's conduct in the first place, given that he had entered into a "Last Chance Agreement" with the company following sexual harassment allegations against a female employee in 2011.  (Pl. Ex. 15).  This agreement provided that "any further incidents of sexually suggestive, demeaning, or

other inappropriate comments or behavior toward other **_employees_** will be grounds for termination." (Pl. Memo. Opp. Mot. Summ. J. 13; Pl. Ex. 15).  Defendant cites to *Paroline v. Unisys Corp.* for the proposition that it may be unreasonable for employers to anticipate future same-sex harassment based on past opposite-sex harassment. (Def. Br. Supp. Mot. Summ. J. n. 1) (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 107 (4th Cir. 1989)).  However, *Paroline* actually stands for the proposition that whether an employer should have anticipated harassment is ultimately a question of fact not to be disposed of by summary judgment, as is the adequacy of remedial measures.  *Paroline*, 879 F.2d at 106-07.

The Third Circuit has held that an employer will be deemed to have constructive notice of harassment "where an employee provides management level personnel with enough information to raise probability of… harassment in the mind of a reasonable employer[.]" *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 294 (3d Cir. 1999).  Defendant therefore challenges the relevance of Plaintiff's reports to Franklin and Curran on the grounds that they were not management-level employees. (Def. Reply Pl. Memo. 1-2). Nonetheless, a complaint made directly to a supervising harasser may also qualify as protected activity under Title VII. *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067-68 (6th Cir. 2015). Therefore, Plaintiff's repeated demands to Pace to stop harassing him at least create a genuine issue of fact as to whether Plaintiff attempted to take advantage of preventative or corrective opportunities. (Am. Compl. ¶ 25).  Therefore, Defendant's Motion for Summary Judgment is denied with regards to Plaintiff's claims of sexual harassment under Title VII, the PHRA, and the PFPO.

**B.    Retaliation Claim**

Defendant's second argument in support of their Motion for Summary Judgment is that Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII and the PFPO. (Def. Br. Supp. Mot. Summ. J. 15).  As claims of retaliation pursuant to the PHRA and the PFPO

analytically parallel claims brought under Title VII, Defendant's arguments concerning Plaintiff's Counts II and VI may be addressed together. *Glover-Daniels v. 1526 Lombard St. SNF Operations LLC*, 2012 WL 2885935, at *6 (E.D. Pa. July 16, 2012); *Smith v. Thomas Jefferson Univ.*, 2006 WL 1887984, at *3 (E.D. Pa. June 29, 2006); *Joseph v. Cont'l Airlines, Inc.*, 126 F.Supp.2d 373, 376 n.3 (E.D. Pa. 2000).

Plaintiffs may establish a *prima facie* case of retaliation by showing that: "(1) [they] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [them]; and (3) there was a causal connection between [...] [their] participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). A causal connection may be inferred from: "(1) the 'temporal proximity' between the protected activity and the alleged discrimination and (2) the existence of 'a pattern of antagonism in the intervening period.'" *Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006). If the temporal proximity between the protected activity and the alleged discrimination is so close as to be "unusually suggestive of retaliatory motive," timing alone may support an inference of a causal connection. *Id.* Finally, a defendant may rebut a plaintiff's *prima facie* retaliation case by proffering a legitimate, non-discriminatory reason for taking an adverse employment action against the plaintiff. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In this case, Defendant contends that Plaintiff's claim of retaliation fails on the third prong because the timing between Plaintiff's EEOC filing and his termination is not "so close as to be unduly suggestive." (Def. Br. Supp. Mot. Summ. J. 17). Courts have reached divergent conclusions regarding when such temporal proximity is "unduly suggestive." For instance, in *Slaughter v. County of Allegheny*, a case cited by Defendant, the Western District of Pennsylvania determined

that "[a] time gap of two months [was] not unduly suggestive." *Slaughter v. Cnty. of Allegheny*, 2013 WL 5491739, at *6 (W.D. Pa. Oct. 1, 2013). Similarly, in *Leboon v. Lancaster Jewish Community Center Association*, the Third Circuit stated, "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *Leboon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). However, in *Kachmar v. SunGard Data Systems, Inc.*, a case cited by Plaintiff, the Third Circuit denied the defendants' motion for summary judgment where at least a four-month gap existed between the plaintiff's last protected activity and her termination. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177-79 (3d Cir. 1997). In the instant matter , there were roughly three months between Plaintiff's filing of a complaint with the EEOC and his termination by Defendant. (SUF ¶¶ 51, 56). Further, there were roughly two months between Heintz becoming aware of Plaintiff's filing and his termination.  (Pl. Memo. Opp. Mot. Summ. J. 22; Pl. Ex. 1 at 40, 42). Viewing the facts in the light most favorable to the nonmoving party (here, the Plaintiff), a reasonable jury could find that this temporal proximity was "unduly suggestive" of retaliatory motive.

Assuming, *arguendo*, that Plaintiff can establish a *prima facie* case of retaliation, Defendant also asserts that they have proffered a legitimate, non-discriminatory reason for terminating him, namely that Defendant needed to reduce their workforce in response to the reduced demand for labor during the winter months, and King accordingly furloughed the most recently-hired Ground Hands who had not obtained their Commercial Driver's Licenses (CDL): Plaintiff and Juan Rodriguez.  (Def. Br. Supp. Mot. Summ. J. 18; SUF ¶¶ 53, 55-56, 58).  Further, Defendant states that King was not even aware of Plaintiff's EEOC filing at the time of his

termination, and therefore King's decision to terminate Plaintiff could not have been spurred by a retaliatory motive.  (Def. Br. Supp. Mot. Summ. J. 18; SUF ¶ 59).

Where a defendant has proffered a legitimate, non-discriminatory reason for taking an adverse employment action against a plaintiff, the plaintiff may defeat a motion for summary judgment by offering "evidence that is sufficient to discredit the proffered reason but need not produce additional evidence beyond his [...] *prima facie* case." *Downs v. Schwartz*, 2015 WL 4770711, at *8 (E.D. Pa. Aug. 12, 2015) (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (citations omitted).  At this stage, a plaintiff need not prove that the defendant employer's proffered reasons are entirely false; rather, the plaintiff need only "[adduce] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Here, Plaintiff has satisfied this light burden with regard to Defendant's claim that Plaintiff's failure to obtain a CDL within three months of hire justified his termination. Plaintiff was employed by Defendant for nine months preceding the events at issue, during which time he alleges he was never informed of the need to acquire a CDL.  (Pl. Memo. Opp. Mot. Summ. J. 24; Pl. Ex. 2 at 185:7-22). Further, he claims the same is true of Rodriguez, who was both hired and fired simultaneously with Plaintiff. *Id.* Finally, Plaintiff notes that Pace himself worked for Defendant for approximately fourteen years before obtaining a CDL. (Pl. Memo. Opp. Mot. Summ. J. 25; Pl. Ex. 3 at 13:1-6).  Defendant notably does not challenge these assertions in their pleadings. Plaintiff also challenges Defendant's contention that King was unaware of his EEOC filing at the time of his termination, noting that it is "unsupported" and that "Plaintiff's allegations… were open and regular discussions around the jobsite." (CSUF ¶ 59; Pl. Ex. 3 at 43:12-19; Pl. Ex. 5 at 62:2-13; Pl. Ex. 6 at 39:7-11, 40:10-13; Pl. Ex. 7 at 38:6-17; Pl. Ex. 8 at 38:19-24).  In fact, Plaintiff argues

that "[t]o accept as true that Mr. King was the only employee without knowledge of the ongoing investigation seems to defy logic and principles of common sense." (CSUF ¶ 59). In sum, Plaintiff has provided enough evidence at this stage to raise a genuine issue of material fact as to whether Defendant's proffered reasons did or "did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764. As Plaintiff does not attempt to establish that a "pattern of antagonism" existed between his EEOC filing and his termination, basing his retaliation claim on timing alone, the Court offers no opinion on whether or not such a pattern may reasonably be said to have existed.

Finally, although the Court finds that Plaintiff has offered enough to survive Defendant's Motion for Summary Judgment on the grounds mentioned above, the Court will briefly address the Parties' disagreement concerning the applicability of the "cat's paw" theory to Plaintiff's claim of retaliation here. A "cat's paw" case is one in which a supervisor "committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *McKenna v. City of Philadelphia*, 649 F.3d 171, 178 (3d Cir. 2011). This Court has determined that a plaintiff may establish a genuine issue of material fact in a cat's paw case as follows:

> "[I]f he establishes that one or more of his nonsupervisory coworkers: (1) performed an act motivated by discriminatory animus; (2) the act was intended by the coworker to cause an adverse employment action; (3) that act is a proximate cause of the ultimate employment action [citation omitted]; and either (a) defendants acted negligently by allowing the co-worker's acts to achieve their desired effect though they knew (or reasonably should have known) of the discriminatory motivation [citation omitted]; or (b) [...] the coworker was aided in accomplishing the adverse employment action by the existence of the agency relation."

*Burlington v. News Corp.*, 55 F.Supp.3d 723, 738-39 (E.D. Pa. 2014).

The Court agrees with Defendant that the "cat's paw" theory of liability is inapplicable to this case, as there is no indication Pace took or intended to take any adverse actions with respect

to Plaintiff's employment. As Defendant properly notes, "There is no evidence that Mr. Pace contacted Human Resources or anyone at management and expressed a desire to terminate, demote or otherwise make an adverse employment decision with respect to Plaintiff at any time." (Def. Reply Pl. Mem. 5).  Nonetheless, as previously noted, Plaintiff has provided enough to overcome Defendant's Motion for Summary Judgment notwithstanding the inapplicability of this theory.

**V.   CONCLUSION**

For the reasons set forth herein, Defendant's Motion for Summary Judgment is denied in its entirety.  An Order consistent with this Memorandum follows separately.

BY THE COURT:

_/s/ C. Darnell Jones, II_____

C. DARNELL JONES, II      J.